IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| CATLIN SYNDICATE LTD. | § | |
| *Plaintiffs* | § | |
| v. | § | CASE NO.: 5:18-CV-01185 |
| IMPLICITY MANAGEMENT COMPANY | § | JURY DEMANDED |
| *Defendant* | § | |

## ORIGINAL COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff Catlin Syndicate Ltd. (hereinafter "Plaintiff" or "Underwriters") files this Original Complaint for Declaratory Judgment against Defendant Implicity Management Company ("Defendant") and respectfully shows the Court as follows:

## I.
## PARTIES

1. Catlin Syndicate Ltd. ("Catlin") was the sole member of Syndicate 2003 during the period of April 1, 2016 to April 1, 2017, the effective period of the insurance policy at issue in this action. Syndicate 2003 was the "Lead" on the policy at issue. Catlin is a foreign company, organized under and a citizen of the United Kingdom, having its principal place of business at 20 Gracechurch Street, London, England EC3V 0BG.

2. Implicity Management Company is a Texas company who may be served with process by personal service at its place of business at 14855 Blanco Road, Suite 309, San Antonio, Texas.

## II.
## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this lawsuit pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202.

4. In addition, this court has jurisdiction over this lawsuit under 28 U.S.C. §1332(a)(1) because Plaintiff and Defendant are citizens of different states and the amount in controversy exceeds $75,000.00, excluding interest and costs.

5. Venue is proper in this Court under 28 U.S.C. §1391(a)(2) because a substantial part of the events giving rise to Defendant's insurance claims occurred within this District and within this Division. More specifically, this is an insurance coverage action concerning a policy issued in Texas, which provides coverage for residential apartment or condo complexes in the Bexar and Guadalupe Counties of Texas.

6. Further, venue is also appropriate in this Court under 28 U.S.C. §1391(a)(3) because Defendant has, at all material times, been a citizen of State of Texas.

## III.
## FACTUAL BACKGROUND

7. Catlin seeks a declaratory judgment to determine its rights and obligations under an insurance policy, Policy No. NGW43482016, issued to Implicity Management Company, effective April 1, 2016 to April 1, 2017 (the "Policy"). The Policy provides coverage for damage to, among others, apartment complexes and condo unit complexes as follows:

| PROPERTY: | LOC. NO.: | ADDRESS: |
|---|---|---|
| Broken Oak Apts. | 1 | 1935 Broken Oak St. San Antonio, Texas 78232 |
| City View | 2 | 2503 Jackson Keller Rd. San Antonio, Texas 78230 |
| The Lodge on Perrin Creek | 3 | 2355 Austin Hwy. San Antonio, Texas 78218 |
| The Township Apts. | 4 | 122 Burr Road San Antonio, Texas 78209 |
| Timber Ridge | 5 | 3200 Timber View |

|  |  | San Antonio, Texas 78251 |
|---|---|---|
| Villa Dijon Condominiums | 6 | 100 Lorenz Road San Antonio, Texas 78209 |
| Montage at North Point | 7 | 3601 Magic Drive San Antonio, Texas 78229 |
| Middletowne | 8 | 1111 N Hwy 123 Bypass Seguin, Texas 78155 |
| City Heights Apts (fka Portofino) | 9 | 9400 Fredericksburg San Antonio, Texas 78201 |
| Green Court | 10 | 119 Williamsburg Place San Antonio, Texas 78201 |
| Regency House | 11 | 900 Burr Road San Antonio, Texas 78209 |

(the "Property").

8. Defendant filed a number of claims under the Policy for damages caused by a hail or storm event which occurred on April 12, 2016, and to which Claim No. N11969 was assigned (the "Claims"). Specifically, the Claims made under the Policy at issue include the following:

| PROPERTY: | LOC. NO.: | ADDRESS: | AMOUNT OF CLAIM: | DEPRECIATION: | AMOUNT PAID: |
|---|---|---|---|---|---|
| City View | 2 | 2503 Jackson Keller Rd. | $424,203.91 | $63,630.60 | $260,573.38 |
| The Lodge on Perrin Creek | 3 | 2355 Austin Hwy. | $1,594,417.47 | $119,581.31 | $1,594,417.47 |
| Timber Ridge | 5 | 3200 Timber View | $132,698.71 | $10,615.90 | $0.00 |
| Villa Dijon Condominiums | 6 | 100 Lorenz Road | $501,428.64 | $87,248.58 | $414,180.06 |
| Montage at North Point | 7 | 3601 Magic Drive | $350,000.00 |  | $350,000.00 |
| Regency House | 11 | 900 Burr Road | $274,182.00 | TBD | $0.00 |
|  |  |  |  |  | $2,619,170.91 |

9. Underwriters assigned the claim investigation to McLarens Global Claims. Thomas J. Brownfield, an Executive General Adjuster with McLarens Global Claims began an investigation of the Claims, including inspecting the Properties and communicating with Defendant's Public Adjuster, Jason Lanier.

10. Further, as part of the investigation, Catlin learned that Defendant and its representatives made material misrepresentations in the application for the Policy at issue by expressly denying that Defendants had made prior claims for hail and/or wind damage to a

number of the properties insured under the Policy. Defendant accepted payment for Claims and filed two lawsuits against Underwriters for alleged late payment interest and penalties and another lawsuit alleging breach of contract and extra-contractual claims. The lawsuits are styled:

- Cause No. 2017CI16321; *Implicity Management Company v. Certain Underwriters at Lloyd's, London and Thomas J. Brownfield*; in the 150th Judicial District of Bexar County, Texas ("Villa Dijon Lawsuit");

- Cause No. 2017CI16323; *Implicity Management Company v. Certain Underwriters at Lloyd's, London and Thomas J. Brownfield*; in the 224th Judicial District of Bexar County, Texas ("Perrin Creek Lawsuit"); and

- Cause No. 2017CI16557; *Implicity Management Company v. Certain Underwriters at Lloyd's, London and Thomas J. Brownfield*; in the 438th Judicial District of Bexar County, Texas ("Timber Ridge Lawsuit").

11.     In investigating the above-described lawsuits to prepare defenses to same, Catlin learned that Defendant made material misrepresentations as to the facts and circumstances with respect to the claims for damage to the Villa Dijon and City View properties in an effort to receive claim payment proceeds from Underwriters to which it was not entitled as more fully set forth below.  Further, Implicity produced documents in the Timber Ridge Lawsuit which included weather data noting that a hailstorm occurred on April 24, 2015, with hail of 1.5" in diameter.  The hail reported at Timber Ridge on the date at issue in Implicity's claims at issue was 1" in diameter per the same document.

12.     Catlin brings this action to determine its rights under the Policy as Defendant has now also submitted a proof of loss claiming $919,667.69 for alleged damage to the Regency House property located at 900 Burr Road, San Antonio, Texas 78209, which is not the subject of a pending lawsuit.  Underwriters' representative obtained roofing repair bids at one-third the estimated cost claimed by Implicity's public adjuster, Lanier.  Because of Defendant's material misrepresentations on the Villa Dijon claim, however, Underwriters rescinded the Policy and notified Implicity of same via a letter of November 13, 2018.  Catlin now seeks a judicial

declaration that the Policy is void and that nothing further is owed under the Policy for any damages or losses claimed thereunder.

## DECLARATORY RELIEF SOUGHT

13. Catlin re-alleges and incorporates by reference all preceding paragraphs.

14. An actual controversy of a justiciable nature presently exists between Plaintiff and the Defendant concerning the rights and obligations of the parties to the Policy with respect to Claim for alleged hail or wind loss.

15. Catlin seeks a judicial determination that there is no coverage for the alleged loss because the Policy and/or the claim is void due to material misrepresentations made by Defendant and/or its representatives on Defendant's behalf during the investigation of the subject Claims. Specifically, the Policy states:

### SECTION III
### Terms and Conditions

\* \* \*

**Section 8**

**CONDITIONS**

\* \* \*

9. **Misrepresentation and Fraud**

    This entire policy shall be void if the Insured has willfully concealed or misrepresented, in writing or otherwise, any material facts or circumstances concerning this Policy or the subject matter thereof, or if the Insured shall make any attempt to defraud either before or after a loss.

16. Defendant, a property management company, applied for a commercial property policy effective April 1, 2016 through April 1, 2017. The Policy insured multiple apartment and condo complexes, each owned by separate entities and managed by Plaintiff. In applying for the policy, Plaintiff was specifically asked to identify prior losses and claims for the preceding three years. Plaintiff provided a "Loss Run" document identifying some prior claims but did not

disclose prior wind or hail damages to Villa Dijon, Township Apartments, or City View Apartments. Underwriters calculated a premium for and issued the Policy based on the reported loss history.

17. *Less than two weeks after* Underwriters agreed to bind the Policy, the loss at issue reportedly occurred on April 12, 2016. Implicity reported hail damage claims to insured properties on the Policy including: Astoria; Perrin Creek; Timber Ridge; Villa Dijon; Oak Hills; Township; and Montage at Northpoint. Implicity's retail agent, Pathfinder LL&D Insurance Group ("Pathfinder") reported the Villa Dijon claim at issue in this lawsuit on April 25, 2016. Implicity notified Tom Brownfield that Plaintiff's contact was Public Adjuster, Jason Lanier ("Lanier").

18. Because of the size of the loss, Underwriters retained UBS to inspect the Property and prepare an estimate for repair. On or about June 21, 2016, Lanier and/or James Wesselski prepared an estimate in the Villa Dijon claim, seeking $620,456.70, including replacement of all building roofs and carports. UBS prepared a report, on or about July 22, 2016, in which UBS noted signs of hail and estimated the repair cost to be $310,081.74. Lanier, with a percentage interest in the ultimate claim payment, prepared an estimate approximately $60-$90 per square higher than that prepared by UBS. UBS re-inspected the property with Lanier to determine the differences in scope and pricing.

19. Ultimately, Lanier agreed to lower his estimate and the Parties reached an agreement to settle the Villa Dijon claim for $501,428.64, with $87,248.58 withheld in recoverable depreciation once the work was completed subject to the Policy's terms and conditions. On June 20, 2017, Lanier submitted to Brownfield a sworn statement in proof of loss, executed by Implicity and subject to the laws of perjury, swearing that the damage to the Property was $501,428.64. The sworn statement in proof of loss also stated, among other things,

that there had been no change of interest, use, or possession of the Property since the inception of the Policy. The sworn statement in proof of loss also attested that the Insured had not made any attempt to deceive Underwriters as to the extent of the claimed loss in any manner. Lanier sent Brownfield the wiring instructions for payment on June 21, 2017. Brownfield sent the information to Underwriters on July 21, 2017 and Underwriters paid Implicity $414,180.06 on August 21, 2017.

20. Unbeknownst to Catlin, however, Implicity was actively pursuing litigation against American Risk Insurance Company ("ARIC") for the same damages of total roof replacements at the Villa Dijon property due to hail and wind which reportedly occurred on March 31, 2013. Specifically, on July 1, 2016, Plaintiff filed a lawsuit styled: Cause No. 2016CI11019; *Implicity Management Company v. American Risk Insurance Company*; in the 37th Judicial District Court of Bexar County, Texas ("the ARIC lawsuit", in which Plaintiff alleges, *inter alia*, that the roofs at Villa Dijon were damaged in the amount of $398,405.77 from a 2013 storm. Without disclosing the almost $400,000 in damages to Underwriters, however, Defendant negotiated a settlement of the claim on Underwriters' Policy and Underwriters paid $414,180.06 to date. At a minimum, Defendant's material falsehoods and omissions resulted in an overpayment by Underwriters of at least $311,157.19 on the Villa Dijon claim.

21. Additionally, on August 16, 2018, Plaintiff received excerpts from a copy of records produced in the ARIC lawsuit by Jason Lanier in response to a deposition on written questions with a subpoena duces tecum. Incredibly, Defendant, Lanier, Villa Dijon's representatives, and Defendant's Counsel were involved in an e-mail, dated April 21, 2016, from a David Ribble to the others wherein Mr. Ribble acknowledged the prior claim against ARIC for the March 2013 roof damage which "totaled" the roofs but he sees no risk in making the duplicative claim to Underwriters.

> -------- Original message --------
> From: David Ribble <david.ribble@gmail.com>
> Date: 04/21/2016 10:28 AM (GMT-06:00)
> To: Jody Marquez <jody.marquez@implicitymanagement.com>
> Cc: Travis Thonhoff <travis.thonhoff@gmail.com>, vdijon@implicitymanagement.com, Jason Lanier <jason@jlanierassociates.com>, Robert Loree <rob@lhllawfirm.com>
> Subject: Re: Vacation
>
> Hi Jody-
>
> I spoke with Jason this past Saturday and now understand our situation.
>
> In short, we already have a claim against American Risk (initiated in Summer 2015) for roof damage due to a storm in late March 2013. They are denying coverage and we are working with Rob on this claim. Can you please share the latest on this claim and what are our next steps?
>
> Also, and more importantly, I would like to open a claim through our new carrier Lloyd's for the recent hail storm. I understand that we already have an existing claim and the roofs were basically "totaled" due to the 2013 storm and filing a claim with Lloyd's might get dismissed but I don't think it causes any harm to at least have this documented with our current carrier. I would like to open this before another large storm comes and we have no recourse for the hail storm just last week.
>
> Please advise what needs to happen next.
>
> Travis - any thoughts or issues with opening a claim through Lloyd's? I don't see any risk and only upside.
>
> David
>
> On Fri, Apr 15, 2016 at 11:38 AM, Jody Marquez <jody.marquez@implicitymanagement.com> wrote:
>
>> We already have a pending claim on Villa Dijon – we cannot do another.
>>
>>
>>
>> Best,
>>
>>
>>
>> Jody Marquez
>>
>> President
>>
>> Implicity Management Company

19

548

22.     Lanier then subsequently advised Implicity and Villa Dijon's representatives that the April 12, 2016 hail storm caused "limited" damage to the metal carports and some paint on some elevations and suggested it may be worth pursuing damages to the paint and carports.

> **Jason Lanier**
>
> From: Jason Lanier <jason@jlanierassociates.com>
> Sent: Saturday, April 23, 2016 1:52 PM
> To: 'David Ribble'
> Cc: Jody Marquez
> Subject: RE: Vacation
>
> David,
>
> We looked at Villa Dijon on Friday and found there to be limited new damaged from the 4-12-16 hail. Roofs as you know are the subject of a prior claim which is litigation at the moment. The new damage consists mainly of dented carport metal and some evidence of paint chipping on certain elevations. This will not be a large claim however it may be worth pursuing just for the paint and carports. I have sent over an agreement to Jody. I have copied her on this email as well.
>
> Thank you,
> Jason Lanier
> J. A. LANIER & Associates, Inc.
> PO Box 520
> Stockdale TX 78160
> O-830-534-3859
> C-830-534-2596
> F-210-579-9469
> Jason@jlanierassociates.com
> www.jlanierasscoiates.com

23. Defendant and Lanier, however, did not limit the claim to paint and carports but, instead, claimed $620,456.70 for replacement of all the buildings' roofs. Implicity, despite acknowledging in writing that it could not make another claim for hail damage as it had a pending claim with American Risk Insurance Company, signed a sworn proof of loss for roof replacements and Lanier provided same to Brownfield. Underwriters paid Implicity over six hundred thousand dollars on the City View and Villa Dijon claims based on Implicity's material misrepresentations. Defendant's acts implicate the Policy's fraudulent claim and void the subject Claim and Policy.

24. Further, on September 14, 2018, Counsel for American Risk Insurance Company sent Plaintiff's Counsel a copy of records produced by Travis Thonhoff, Villa Dijon's President. Those records further indicate an intent to deceive Underwriters in that the records include, *inter alia,* references to roof leaks from limbs damaging the roofs as far back as 2011, resident complaints about roof damages and interior leaks in 2014, references to bids for carport damage

repair on March 10, 2015, roof leaks from flashing deficiencies on March 10, 2015, April 20, 2015, April 22, 2015, and others. Incredibly, on April 22, 2015, Implicity's e-mail with Villa Dijon notes roof repairs for a claim on which Jason Lanier was working on an engagement letter.

> --------- Forwarded message ---------
> From: **Teresa Betancourt - Manager, Villa Dijon** <vdijon@implicitymanagement.com>
> Date: Wed, Apr 22, 2015 at 1:51 PM
> Subject: RE: VDC Approved Projects
> To: Travis Thonhoff <travis.thonhoff@gmail.com>, Jody Marquez <jody.marquez@implicitymanagement.com>, Selina Perez <selina.perez@implicitymanagement.com>
> Cc: David Ribble <david.ribble@gmail.com>, HOA Villa Dijon <villadijonhomeowners@gmail.com>
>
> All,
>
> I have had the roof repairs done already and invoice turned in to corporate .Looks like none to soon as it is suppose to pour down .The backfill has been scheduled for tomorrow at 9:30 .Touched base with Jason Lanier and he is working on the engagement letter .
>
> Thank you,
>
> Teresa Betancourt
>
> Community Director
>
> Villa Dijon Condo's

535

25. Further, the records also show that, on June 24, 2015, Implicity noted damage caused by overgrown tree limbs and instructed that the limbs should be cut back so that it could make an insurance claim for hail damage.

> ---------- Forwarded message ----------
> From: **Teresa Betancourt - Manager, Villa Dijon** <vdijon@implicitymanagement.com>
> Date: Wed, Jun 24, 2015 at 2:01 PM
> Subject: Roof building 5
> To: Travis Thonhoff <travis.thonhoff@gmail.com>, David Ribble <david.ribble@gmail.com>
>
> Board,
>
> Just to let you know that I had building 5 inspected, the side closest to mail boxes and we are in sad shape. The pin hole caused by the overgrown trees has created damage to interior of 504 but we have been dealing with 503 and a leak through the bedroom window and the 501 picture we saw of bubbling. We have major hail damage but in order to claim this thru insurance for roof replacement we need to cut trees back, immediately around building 5.
>
> The roofing company will put everything in a detailed report and they can deal with our insurance but this interior leak will be fixed by at least Saturday to keep it from creating more interior damage which we are responsible for. The roofs for all the other buildings will be inspected in the next couple of weeks and Travis I asked them to look at your roof next as we have had problems.
>
> I will send you pictures they captured when they forward to me. What will be evident is tree damage along with hail damage which can be distinguished one from the other.
>
> Thanks,
>
> *Teresa Betancourt*
>
> *Community Director*
>
> 516

26.     Implicity's President noted the need for new roofs and her plan to discuss same with Lanier on November 30, 2015, in response to Implicity's property manager for Villa Dijon noting that there was not enough money to replace the roofs or even pay the insurance policy deductible.

> From: Teresa Betancourt - Manager, Villa Dijon [mailto:vdijon@implicitymanagement.com]
> Sent: Monday, November 30, 2015 4:22 PM
> To: 'Travis Thonhoff' <travis.thonhoff@gmail.com>; Jody Marquez <jody.marquez@implicitymanagement.com>
> Cc: 'David Ribble' <david.ribble@gmail.com>
> Subject:
>
> I hate to say this but we cannot afford a new roof at this time . The Wrights do not want another patch job and that is what we need to do . There is also a deductable on the roof replacements even if it were approved right now and we do not have that money either .I would love to tell them we are going to replace the roof but we cannot.
>
> I do not have any solutions other than try to get to the source of the problem. I have had to deal with two other roofs besides hers .
>
> Thank you,
>
> Teresa Betancourt
>
> Community Director
>
> Villa Dijon Condominiums

2

52

27.   The above-described recently provided documents unquestionably show that Implicity acted with intent to obtain payments from Underwriters for alleged damages which occurred well in advance of the inception of Underwriters' Policy. Implicity was fully aware of damages and roof leaks at Villa Dijon prior to the inception of Underwriters' policy and prior to the reported loss date yet perjured itself by the submission of a sworn statement in proof of loss claiming damages for which it sought payment from American Risk for alleged storm damages reportedly occurring in 2013. Implicity's material misrepresentations and omissions to Underwriters void the Policy.

28.   Based on the recent discovery of Implicity's intentional misrepresentations and omissions, on November 13, 2018, Underwriters advised Defendant, in writing, that the Policy was void, that Underwriters were rescinding the Policy, that Underwriters would not pay anything further on the Claims, and that Underwriters would credit the policy premium toward

the overpayment made to Defendant on the Villa Dijon claim. Catlin now seeks a judicial determination that the Claim and/or Policy is void and that Underwriters have no further obligations under same.

## V.
## PRAYER

WHEREFORE, Plaintiff prays that the Court declare Implicity Management Company's material misrepresentations and omissions voided the Policy, that Plaintiff's rescission of same was valid, that Plaintiff has no further obligations under the Policy, and grant it such other and further relief to which Plaintiff may justly be entitled.

Respectfully submitted,

**SHEEHY, WARE & PAPPAS, P.C.**

By: */s/ D. Christene Wood*
D. Christene Wood
State Bar No. 24042188
Sheehy, Ware & Pappas, P.C.
Email: cwood@sheehyware.com
909 Fannin Street, Suite 2500
Houston, Texas 77010-1008
Telephone: 713.951.1089
Facsimile: 713.951.1199

***Attorneys for Plaintiff***